FILED
2008 Nov-04 PM 01:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **TIM SANDERS,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case. No.: 5:07-CV-2142-JHH |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of Social Security,** } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Plaintiff, Tim Sanders, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.   Proceedings Below**

Plaintiff protectively filed his applications for a period of disability, DIB, and SSI on October 6, 2004, alleging a disability onset date of March 1, 2003, (R. 16, 40-45, 148-50), which was later amended to September 24, 2004, (R. 16, 51-52). Plaintiff had acquired sufficient quarters of coverage to remain insured through June 30, 2009. (R. 18, 151).

On January 13, 2005, Plaintiff's application was denied initially. (R. 153-57). On January 21, 2005, Plaintiff timely requested an administrative hearing (R. 31-33), which was held before an

Administrative Law Judge ("ALJ") on June 28, 2006, (R. 158-83).  Both Plaintiff and Vocational Expert Karen Vessell testified at the hearing.  (R. 161-83).

In the October 27, 2006 decision, the ALJ determined that Plaintiff was not eligible for DIB or SSI because he was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 13-23).  Thereafter, on December 3, 2006, Plaintiff requested review of the ALJ decision by the Appeals Council. (R. 11-12).  After the Appeals Council denied Plaintiff's request for review on September 28, 2007, (R. 4-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of Plaintiff's alleged onset of disability, he was thirty-eight years old and had an eighth grade education with limited ability to read and write. (R. 161, 179).  Plaintiff's past relevant positions as a materials handler and a truck driver are heavy, semi-skilled positions. (R. 21). According to Plaintiff, he has been unable to engage in substantial gainful activity since September 24, 2004, due to lumbar spondylosis with herniated nucleus pulposus and morbid obesity. (R. 16, 40-45, 148-50).

At the June 28, 2006 hearing, Plaintiff reported that he weighs approximately 380 pounds and is six feet, four inches tall. (R. 164).  Plaintiff complained of pain in his lower back and left lower hip and problems with circulation in his right leg. (R. 172).  Plaintiff testified that he is in constant pain, which he rates as a "5" (when medicated) on a scale of one to ten. (R. 168).  Plaintiff stated that he is able to obtain pain medication on the internet. (R. 168-69).

Plaintiff also stated that he is able to perform light cleaning and cooking to help around the house. (R. 167).  He can drive a car short distances, and he is able to go shopping, although only for 20 to 25 minutes at a time. (R. 169).  According to Plaintiff, he can stand on his feet for

approximately thirty minutes at a time, although he readjusts his position often when sitting or lying down. (R. 167-68). Plaintiff is able to walk without a cane, although not without pain and not without resting when walking distances longer than 30 yards or so. (R. 170). Plaintiff also testified that he wakes often from sleeping to readjust his position and due to pain. (R. 171).

## II.   ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working ("Step One"). Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities ("Step Two"). Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations ("Step Three"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work ("Step Four"). The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work ("Step Five"). In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform

his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff meets the insured status requirements of the Act through June 30, 2009, (R. 18, No. 1), and that he has not engaged in substantial gainful activity since his alleged onset of disability on September 24, 2004, (R. 18, No. 2). The ALJ found that, during the relevant time period, Plaintiff suffered from the medically determinable impairments of herniated nucleus pulposus of L3-4, with spondylosis and radiation into the lower left extremity; morbid obesity; and obstructive sleep apnea, which he characterized as "severe." (R. 18, No. 3). Nevertheless, he determined that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 18, No. 3). According to the ALJ, Plaintiff's subjective complaints concerning his alleged impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 19-20, No. 5).

Based upon his review of the record, the ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light work, provided that it involves minimal reading and writing; lifting no more than ten to twenty pounds; the option to change position at will; only occasionally climbing stairs or ramps, stooping, kneeling, crouching, crawling, balancing, walking, and standing; and never climbing ladders, working around open heights, performing pushing or pulling with the lower left extremity, or working commercial driving. (R. 19-21, No. 5). With the help of testimony from a VE, the ALJ found that Plaintiff could not return to

his past relevant work, which is heavy and semi-skilled in nature, (R. 21, No. 7), although he did determine there are jobs that exist in significant numbers that Plaintiff can perform, even considering his age, education, work experience, and RFC, (R. 21, No. 10). Specifically, the ALJ relied on the VE's testimony that Plaintiff could perform certain light, unskilled occupations that exist in significant numbers in the regional and national economy, such as storage facility rental clerk, parking lot cashier, and photocopying machine operator. (R. 22, No. 10). Thus, the ALJ found that Plaintiff was not under a "disability" at any time during the relevant period. (R. 22, No. 11).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. # 10). Specifically, Plaintiff argues that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because the ALJ's RFC calculation lacks medical support, was not preceded by a consultative examination, and inappropriately assumes that Plaintiff discontinued treatment due to improvement in his condition.

### IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

Against that backdrop of applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal, which center on the ALJ's RFC finding. Plaintiff's principal complaint with the RFC calculation is that "the medical evidence of record (MER) in the present case contains no specific medical source opinion by any physician of record either examining or reviewing." (Doc. # 10, at 7). Next, Plaintiff suggests that the ALJ should have ordered a consultative examination because none of Plaintiff's treating physicians performed a functional capacities evaluation outlining "specific limitations for work activity spurring from these impairments." (Doc. # 10, at 7, 9). Finally, Plaintiff asserts that the ALJ's RFC assessment was influenced by his inappropriate

6

assumption that Plaintiff discontinued treatment due to improvement in his condition. (Doc. # 10, at 8-9).  The court will address in turn each component of Plaintiff's challenge.

      A.      **Substantial Evidence and Proper Legal Standards Support the ALJ's RFC Calculation**

First, the court finds that the ALJ applied proper legal standards when calculating Plaintiff's RFC, and that substantial evidence supports his conclusion.  An RFC assessment "is the adjudicator's ultimate finding of 'what you can still do despite your limitations.'" SSR 96-5p, 61 Fed. Reg 34471, 34473 (1996) (citing 20 C.F.R. §§ 416.945 and 416.946).  The regulations make clear that the sole responsibility for determining Plaintiff's RFC falls on the ALJ.  20 C.F.R. §§ 404.1527(e)(2); 404.1545(a) (2007).  While an ALJ should review all of the medical evidence, and can consider opinions from acceptable medical sources when calculating RFC, "the final responsibility for deciding [those] issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).

In direct contrast to the discretionary approach adopted by the above regulations, Plaintiff would have this court impose a much stricter standard of review for the ALJ's RFC assessment. According to Plaintiff, an RFC based upon substantial record evidence is not sufficient.  Rather, the ALJ must base his RFC calculation on an *actual* RFC assessment or Physical Capacities Evaluation ("PCE") completed by a physician, and not just any physician of record, but a *treating or examining* physician.  (Doc. # 10, 10).  Plaintiff's argument is supported only by a non-binding district court case opining that "the Commissioner's fifth-step burden cannot be met by a lack of evidence, or by the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining

7

physician." *Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala. 2003).[1] Although the *Coleman* opinion generally references other decisions of "[t]his court" that it believes to be consistent with the above statement, the opinion cites no particular cases and offers no logical foundation or legal support from the Eleventh Circuit for the imposition of such a harsh standard. *Coleman*, 264 F.Supp.2d at 1010. Indeed, such a standard appears contrary to the regulatory scheme cited above. Thus, *this court* finds no reason to deviate from the discretionary approach outlined in the regulations and therefore rejects Plaintiff's invitation to adopt such a bright line rule that an ALJ's "PCE findings cannot possibly be based on substantial evidence [if not based on] . . . any specific evaluation of limitation from a treating or examining source." (Doc. # 10, at 10).

Indeed, in this case, the record makes clear that even in the absence of an official PCE from a treating physician, the ALJ's RFC assessment is supported by substantial medical and testimonial evidence. Here, the ALJ determined that Plaintiff could perform a limited range of light work,[2] provided that it involves minimal reading and writing; lifting no more than ten to twenty pounds; the option to change position at will; only occasionally climbing stairs or ramps, stooping, kneeling, crouching, crawling, balancing, walking, and standing; and never climbing ladders, working around open heights, performing pushing or pulling with the lower left extremity, or working commercial

---

[1] Although Plaintiff's brief cites to "*Cullman v. Barnhart*, 264 F.2d 1007,1011" for the quotation reproduced in his brief (Doc. # 10, at 10), the correct citation for the quotation is *Coleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala. 2003).

[2] The regulations set forth the parameters of work at the "light" exertional level, which must involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds. 20 C.F.R. § 404.1567(b) (2007). Moreover, for an individual to be able to perform the full range of light work, he must be able to walk and stand for a period of time or sit most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) (2007).

driving. (R. 19-21, No. 5). In making that finding, the ALJ thoroughly analyzed and took into account the medical evidence of record and Plaintiff's own testimony regarding his condition.

First, the ALJ's RFC assessment is consistent with records from Plaintiff's primary treating physician, which indicate continual improvement in Plaintiff's condition and management of his pain with medication. In September 2006, after Plaintiff was seen in the emergency room for low back pain radiating into the hips, (R. 107-15), he began treatment with orthopedist Dr. Vandana Maladkar for nonradiating pain in the lumbosacral region that worsened with any movement. (R. 134). Dr. Maladkar's initial exam showed limited range of motion, negative straight leg raise test, and an essentially normal neurological exam, and she medicated Plaintiff with a Medrol Dosepak, hydrocodone, and Flexeril. (R. 135-36). An October 2004 lumbar MRI showed mild dessication of the L3-4 and L4-5 discs and a herniated disc at L3-4 (R. 137), and Dr. Maladkar's subsequent exam showed a limited lumbar range of motion due to pain, negative straight leg raising on the left, and equivocal straight leg raising on the right. (R. 132).

By the end of October 2004, Plaintiff told Dr. Maladkar that he was "doing much better" and only complained of some achy pain, mainly in his back, which he rated as a "5" on a scale of one to ten. (R. 130). Although Plaintiff stated that his pain occasionally radiated into his left leg, he denied any lower extremity weakness. (R. 130). At that time, his exam revealed limited lumbar range of motion, an equivocal straight leg raise test on both legs, full 5/5 motor strength, grossly intact sensation, and equal and adequate reflexes. (R. 130). Dr. Maladkar kept him on Celebrex, Flexeril, and Lortab, and she gave him prescription samples after he told her he could not afford the medication. (R. 131).

In December 2004, Plaintiff reported more improvement to Dr. Maladkar, indicating that his pain had been reduced by 50%. (R. 128). His exam revealed limited, but improving lumbar range of motion, equivocal straight leg raise test on the left and negative on the right, full 5/5 motor strength, grossly intact sensation, and equal and adequate reflexes. (R. 128-29). In January 2005, Plaintiff reported no change from his previous visit, reiterating that his back pain had improved from a few months ago. (R. 126). As before, Plaintiff reported that walking increased his left leg pain. (R. 126).

When Plaintiff saw Dr. Maladkar for the last time in March 2005, he again reported that he was doing about the same. (R. 124). Plaintiff complained that his low back and left leg pain was worse with prolonged sitting, standing, or walking, although he felt that the Celebrex and Lortab alleviated his pain. (R. 124). Upon exam, Plaintiff's lumbar range of motion was still improved, his straight leg raise test was equivocal on the left and negative on the right, he had full 5/5 motor strength, his sensation was grossly intact, his reflexes were equal and adequate, and the remainder of his physical exam was unchanged. (R. 124-25).

Thus, as the ALJ noted, Dr. Maladkar's treatment through March 2005 showed Plaintiff had significantly improved since his September 2004 injury – his lumbar range of motion had improved and, with the exception of one mildly positive and a few equivocal straight leg raise tests, his physical exams were essentially normal. (R. 18-20). The ALJ's decision to limit Plaintiff's RFC to work that allows him to change position at will (R. 19-20), is supported both by Dr. Maladkar's treatment notes that Plaintiff's pain was aggravated by prolonged walking, standing, or sitting (R. 124, 126, 128, 132, 134), and by Plaintiff's own testimony that he was limited in his ability to perform prolonged standing, walking, and sitting (R. 167, 169-170, and 176). Plaintiff's counsel

confirmed at the hearing that Plaintiff had no problems effectively ambulating with periods of rest or sitting. (R. 177).

Moreover, Plaintiff's own testimony about his level of pain demonstrates his ability to perform work in accordance with the ALJ's RFC finding. Plaintiff testified that, when medicated, his pain was no more than a "5" out of "10." (R. 168). There is no indication from the record that Plaintiff has been unmedicated at any time relevant to the ALJ's disability analysis. Although the record illustrates that Plaintiff may not have been able to afford certain pain-relieving procedures (*i.e.,* epidurals and physical therapy), it appears that he consistently has been able to obtain pain medication by either receiving samples from Dr. Maladkar or purchasing medication from the internet. Almost one year after his last March 2005 appointment with Dr. Maladkar, Plaintiff reported that he was still taking Celebrex for inflammation and Lortab for pain. (R. 100). Both before and after the June 2006 hearing, Plaintiff confirmed that he was taking 10 mg of hydrocodone for pain that he had obtained from an internet company. (R. 104, 168-69, 146). Thus, the record indicates that at all times relevant to the ALJ's analysis, Plaintiff has obtained and taken pain medication that controls his pain to a moderate level and that would allow him to perform work at the level determined by the ALJ's RFC assessment.

In light of the above evidence, and applying the proper legal standards (as the ALJ did), the court finds that substantial evidence supports the ALJ's RFC assessment.

**B.     The ALJ Did Not Err by Failing to Order a Consultative Examination**

Given that substantial evidence, this court finds no error in the ALJ's decision not to order an additional consultative examination when calculating Plaintiff's RFC. Although it is certainly true that the ALJ could have ordered additional examinations to aid in his RFC assessment, he was

not obliged to do so. The regulations clarify that a "consultative examination *may* be purchased when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on your claim." 20 C.F.R. §§ 404.1529a(b), 416.919a(b) (emphasis added). Indeed, "'in fulfilling his duty to conduct a full and fair inquiry, the administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision.'" *Holladay v. Bowen*, 848 F.2d 1206, 1207 (11th Cir. 1988) (quoting *Ford v. Sec. of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981)). Given the consistent and overwhelming evidence that Plaintiff's condition had improved and his pain was well-managed, there was no reason for the ALJ to expend additional resources to obtain a superfluous opinion.

Moreover, it is important to note that while the ALJ has the duty to "investigate the facts and develop the arguments both for and against granting benefits, *Sims v. Apfel*, 530 U.S. 103, 111 (2000), Plaintiff has the responsibility to produce evidence in support of his disability claim, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Evidence regarding the specific limitations and restrictions Plaintiff experiences in his ability to work is evidence Plaintiff is responsible for producing. *See Ellison,* 355 F.3d at 1276. Accordingly, it is Plaintiff, and not the ALJ, who carries the burden to provide a medical record that is complete in the first instance. *See* 20 C.F.R. §§ 416.913(e), 416.916. If Plaintiff had or knew of additional medical evidence that supports his claims of disability, it was Plaintiff's responsibility to raise that evidence for the ALJ to consider.

### C.     The ALJ Did Not Err When Considering Plaintiff's Treatment Discontinuation

Finally, Plaintiff contends that the ALJ inappropriately assumed that his failure to seek treatment from Dr. Maladkar after March 2005 was due to improvement in his condition (R. 20),

when, in fact, the decision to discontinue treatment was the result of financial difficulties. (Doc. # 10, at 8). Although Dr. Maladkar advised Plaintiff in March 2005 to return for treatment in one month (R. 125), the record is devoid of any medical evidence until fifteen months later when Plaintiff saw Dr. Qi Wan for complaints of right leg pain and knee problems. (R. 138-139). Plaintiff takes issue with the ALJ's observation that "[t]he claimant undoubtedly continued to show improvement as the records do not indicate he has returned to Dr. Maladkar since that time." (R. 20). According to Plaintiff, "both Dr. Maladkar's records and Plaintiff's testimony clearly indicate that the reason he discontinued treatment with this specialist is because he had no insurance and lacked the funds to pay for the expensive visits or recommended treatment." (Doc. # 10, at 8).

Regardless of the true reason for Plaintiff's decision not to seek further treatment from Dr. Maladkar,[3] the ALJ's ultimate assessment that Plaintiff continued to improve is supported by substantial evidence. No matter what motivated Plaintiff to go fifteen months without treatment, records from when he did resume treatment suggest further improvement of his condition and management of his pain. As noted earlier, records from the six months prior to Plaintiff's March 2005 lapse in treatment show continual improvement under the care of Dr. Maladkar. And when Plaintiff did eventually seek medical care again in June 2006 from internist Dr. Wan, his physical examination was even less remarkable than any physical exam performed by Dr. Maladkar in the previous fifteen to twenty months. Indeed, Dr. Wan's exam was essentially *unremarkable* with the exception of decreased pedal pulses and some edema, leg tenderness, and discoloration. (R.

---

[3] The court finds no support for Plaintiff's assertion in his brief that Dr. Maladkar's treatment records show that financial difficulties prevented him from seeking further treatment from her. (Doc. # 10, at 8). Although Plaintiff testified at the hearing that he could no longer afford to see Dr. Maladkar, (R. 166), Dr. Maladkar's treatment records are silent as to the reason for his discontinuation of treatment in March 2005. (R. 124-137).

138-139). Accordingly, setting aside the matter of why Plaintiff's treatment lapsed, the objective medical evidence confirms the ALJ's observation that Plaintiff's conditions continued to improve.[4] Thus, any comment or inference by the ALJ regarding why a lapse in treatment occurred is simply inconsequential.

## VI.     Conclusion

Thus, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this

---

[4] Moreover, even if financial considerations did motivate Plaintiff's lapse in treatment, there is no indication that he sought treatment from Dr. Maladkar or other specialized treatment for his back and leg pain once those financial circumstances were remedied. Although Plaintiff's counsel reported at the June 2006 hearing that he had recently obtained insurance coverage through his wife (R. 163), nothing suggests that Plaintiff then sought care from an orthopedist or pain management specialist. Instead, he decided to see Dr. Wan, who is an internal medicine physician.

Although Plaintiff points out that Dr. Wan must have been concerned about his leg pain because he not only prescribed sleep studies, but also recommended additional testing to determine the cause of his leg pain, (Doc. # 10, at 9-10), the record is devoid of any subsequent and additional medical records or testing regarding back or leg pain. After the hearing, the ALJ held the record open for thirty days and invited Plaintiff to submit additional medical records that would support his allegations of leg and back pain and resulting limitations, but Plaintiff chose only to submit medical records regarding his sleep apnea. (R. 140-47, 164). His decision not to submit updated records regarding his back and leg pain, even when the record was held open to allow him to do so, is telling. Moreover, that Plaintiff submitted only sleep studies subsequent to the hearing also discredits Plaintiff's testimony at the hearing that he did return to Dr. Maladkar, who allegedly requested that he obtain another MRI for his back condition. (R. 173). No medical evidence supports that testimony.

determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the   4th   day of November, 2008.

                                                  /s/ James H. Hancock
                          SENIOR UNITED STATES DISTRICT JUDGE